PETERSON OIL COMPANY, Plaintiff, v. FRARY, State Inspector of Petroleum Products, Defendant.

(192 N. W. 366.)

(File No. 5202.    Opinion filed February 24, 1923.)

1.  Constitutional Law—Legislature—No Limitations on Legislative Powers, Except by State and Federal Constitutions.
     There are no limitations on the legislative powers of the Legislature, except those imposed by the state and federal constitutions.

2.  Constitutional Law—Statutes—Act Not Declared Unconstitutional Unless so Plainly so as to Leave no Reasonable Doubt.
     No act should be declared unconstitutional, unless invalidity is so plain and palpable as to leave no reasonable doubt.

3.  Constitutional Law—Statutes—Statutes Interpreted as Consistent With Constitution If Possible.
     Where the language of a statute is susceptible of any reasonable construction consistent with the Constitution, it should be so interpreted.

4.  Commerce—Interstate Commerce—State May Require Inspection

of Inflammable Substances Within Its Borders, or in Absence
of Federal Legislation, When Moving in Interstate Commerce.

A state may require inspection, including tests as to quality,
as a safeguard with regard to inflammable substances, such as
petroleum products, found within its borders, or, even when
moving in interstate commerce, where there is no legislation by
Congress on the subject.

5.  **Commerce—Oil Inspection—Petroleum Products in Purchaser's
Storage Tanks Held Liable to State Inspection Tax.**

Petroleum products, kept in the purchaser's storage tanks for
sale and use in the state, before inspection payment of the in-
spection fee, held liable to the state inspection tax imposed by
Laws 1916-17, c. 243, Sec. 5, (Rev. Code 1919, Secs. 7866-
7883), though shipped from other states; they having passed
out of interstate commerce and come to rest within the state.

6.  **Commerce—Oil Inspection—State Oil Inspection Law Held not in
Violation of Interstate Commerce Clause or Constitutional Pro-
hibition of State Duties on Imports.**

Rev. Code 1919, Secs. 7866-7883, requiring inspection of
petroleum products before sale or use, and imposing an inspec-
tion fee of five cents a barrel, held not in violation of Const.
U. S. art. 1, Sec. 8, with respect to the regulation of interstate
commerce, or Section 10, prohibiting the levying of duties on
imports by the state, except as necessary for executing its in-
spection laws, nor of the two construed together.

7.  **Constitutional Law—Oil Inspection—Due Process of Law—State
Oil Inspection Law Held Not in Violation of Due Process
Clause.**

Rev. Code 1919, Sec. 7866-7883, requiring inspection of
petroleum products before sale or use, and imposing an inspec-
tion fee, held not violative of Const. U. S. Amend. 14, Sec. 1,
or Const. art. 6, Sec. 2, as to due process of law.

8.  **Taxation—Oil Inspection—Constitutional Law—Law Imposing
Oil Inspection Fee Held Not Unconstitutional As Not Distinctly
Stating Object to Which Tax Only May Be Applied.**

Rev. Code 1919, Sec. 7866-7883, requiring inspection of
petroleum products before sale or use, and imposing an inspec-
tion fee, held not in violation of Const., art. 11, Sec. 8, requir-
ing that taxes be levied "in pursuance of law, which shall dis-
tinctly state the object of the same to which the tax only shall
be applied."

9.  **Taxation—Constitutional Law—Oil Inspection—Oil Inspection
Law Not Void as to Equality and Uniformity of Taxation.**

The words "all taxation shall be equal and uniform" having
been obliterated from Const. art. 6, Sec. 17, by the adoption of
article 11, Sec. 2, which expressly permits the taxation of occu-

pations, the state oil inspection law (Rev. Code 1919, Sec. 7866-7883), imposing a fee of five cents per barrel, cannot be held void as repugnant to such provision.

Polley, J., dissenting

Original action for injunction by the Peterson Oil Company against Guy G. Frary, as State Inspector of Petroleum Products. Application for injunction denied.

*Bates, Johnson & Simons*, of Sioux Falls, for Plaintiff.

*Byron S. Payne*, of Pierre, and *C. C. Caldwell*, of Sioux Falls, for Defendant.

(6), (7), and (9) To points six, seven and nine of the opinion, Plaintiff cited: Bartless Oil Co. v. Jackman (N. D.), 150 N. W. 576; State v. Standard Oil Co. (Neb.), 161 N. W. 537; D. E. Foote Co. v. Stanley, 232 U. S. 494; Red "C" Oil Manufacturing Co. v. Board of Agriculture, 222 U. S. 380; State ex rel Bee Building v. Savage (Neb.), 91 N. W. 716; State ex rel Cornell v. Poynter (Neb.), 81 N. W. 431; State ex rel Brewster v. Cumiskey (Kan.), 155 Pac. 47; State v. Bartles Oil Co. (Minn.), 155 N. W. 1035; Woffard Oil Co. v. Smith, Atty Gen. (Ala.), 263 Fed. 396; Malin v. LaMoure County (N. D., 145 N. W. 582; Messenger v. Converse County (Wyo.), 117 Pac. 126; Foote v. Clagget, 116 Maryland 228; Castle v. Mason (Ohio), 110 N. E. 463.

Respondent cited: American Steel & Wire Co. v. Sepped, 192 U. S. 500, 48 L. Ed. 538; Territory of New Mexico ex rel McLean v. Denver & Rio Grande R. R. Co., 203 U. S. 39, 51 L. Ed. 78; Texas Co. v. J. J. Brown, U. S. 66, L. Ed.; Pure Oil Co. v. Minnesota, 248 U. S. 158, 162, 63 L. Ed. 180, 188; 39 Sup. Ct. Rep. 35; In re McPherson, 104 N. Y. 308; State ex rel Ross, 166 Pac. 505; Wheelen v. S. D. Land Settlement Board, 43 S. D. 551, 181 N. W. 359; Re Watsoin, 17 S. D. 486; State v. Thompson, 25 S. D. 248; In re McKennan Estate, 25 S. D. 369, 27 S. D. 136, 26 R. C. L. 237; Standard Oil Co. v. Graves, 162 Pac. 556; Pure Oil Co. v. State of Minnesota, 248 U. S. 158, 63 L. Ed. 180.

(8) To point eight, Plaintiff cited: In re Limitation of Taxation (S. D.), 54 N. W. 417; State v. Lawrence, 61 So. 975; Graves v. Janes, 18 Ohio C. C. N. S. 488; Vernor et al v. Secretary of State (Mich.), 146 N. W. 338.

SHERWOOD, J.   This is an original action submitted on an agreed statement of facts.   Plaintiff is a domestic corporation, engaged in selling and distributing petroleum product in large quantities at Dell Rapids.   Defendant is the state food and drug commissioner, who as such commissioner is inspector of petroleum products within the state.

Plaintiff contends that the law of this state relating to inspection of petroleum products is void, and that the state food and drug commissioner should be enjoined from enforcing the same, because in violation of certain provisions of the federal and state Constitutions, hereinafter noted.   This law is found in sections 7866 to 7883, inclusive, and in general provides for the inspection of all petroleum products before they are sold, offered for sale, or used for illuminating purposes in this state, and authorizes the inspector to have access to any warehouse, oil house, station, or other building where such products are kept for sale or use, and to cars, tanks, packages, etc., containing products subject to inspection.   The inspector has the right to take samples sufficient for inspection, with authority to open any tank car in the state subject to inspection under the law, and to take therefrom a sample sufficient for inspection, after which he shall properly seal the car or tank.   An inspection fee of 5 cents a barrel is provided for all petroleum products inspected, and this fee is made a lien on the products so examined, and a penalty is provided for selling, or offering for sale, such products before the inspection.

It will be observed that only petroleum products sold, offered for sale, or used in this state, and such products as are so kept for sale or use, are to be inspected, that if samples are taken from any tank car, subject to inspection, it is to be resealed, and that the penalty applies only for offering for sale such products before inspection.

The stipulated facts pertinent to this issue show:   That plaintiff bought his petroleum products direct from the refineries in Oklahoma and Texas, or through brokers from states outside of South Dakota.   That such products were shipped in carload lots from states outside of South Dakota to Dell Rapids.   That plaintiff maintained at the city of Dell Rapids large stationary storage tanks, into which he received and kept for sale and distribution

such products. That on arrival at Dell Rapids the tank cars in which the railway company sent the products were unloaded into plaintiff's stationary storage tanks. That all such products, so purchased by plaintiff, were kept by him to be sold to the public in the state of South Dakota. Plaintiff resold these petroleum products by taking them from his large storage tanks, in wagons or motor trucks, and selling them at retail to consumers, or at wholesale to other dealers in Dell Rapids. That in all cases, before plaintiff resold these products, they were unloaded by him, and mixed together in the stationary storage tanks above referred to.

That the plaintiff, on arrival of a shipment of petroleum products, saved from each tank car a small bottle of the product, as a sample, and defendant, through his deputies and inspectors, visited plaintiff's place of business at frequent intervals, and made his tests from the samples of petroleum products saved by plaintiff in the bottles, and furnished by him in such bottles to the inspector. That defendant also sometimes inspected plaintiff's products by taking samples out of plaintiff's storage tanks after they had been unloaded into these storage tanks from the tank cars.

That the inspection fees were charged and collected by the defendant direct from the plaintiff, through the defendant's office at Vermillion, some time after the inspection was made. That approximately 58 per cent of the total expenses of defendant in performing his official duties, in the years 1920, 1921, and 1922, have to do with and are occasioned by his inspection of petroleum products, and approximately 47 per cent of the fee charged and received by defendant for inspection of petroleum products is used to pay the expenses of such inspection, and approximately 53 per cent thereof remains in the general fund of the state, and is used by the state for general purposes.

The first law relating to the inspection of petroleum products was passed in 1897 (Laws 1897, c. 68), and has been several times amended; the rate being as high at times as 40 cents per barrel for inspecting small quantities, and as low as 10 cents per barrel. For several years up to 1917 the fee for inspecting oils in this state in quantities was 10 cents per barrel. That in 1917, the fee was reduced (Laws 1916-17, c. 243, § 5) by the Legislature to 5 cents per barrel, without regard to the number of barrels inspected, at which figure it has remained ever since.

That since 1913 the expenses of the inspection of petroleum products have not been kept separate from other expenses of the food and drug department. That the estimated profits received by the state from the inspection of petroleum products have been as high as 70 $^6/_{10}$ per cent in 1917, and as low as 52 $^5/_{10}$ per cent in 1922, and, in tabulating the expenses of inspection of petroleum products, no consideration has been given to the services and expenses of any department of government, except the expenses of the food and drug department in inspecting such products, and no charge has been made for office rent, fuel, lights, or janitor services, in connection with said department.

It is clear from this evidence that plaintiff's petroleum products had come to rest in his own storage tanks, from which he sold them at retail or wholesale, and in which he kept them for sale and use in this state before they were inspected or the inspection fee paid.

It is claimed by plaintiff that this law violates the following sections of the United States Constitution, namely:

Section 1 of the Fourteenth Amendment, which provides:

"Nor shall any state deprive any person of life, liberty or property, without due process of law."

Section 10 of article 1, which provides:

"No state shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

And section 8 of article 1, which provides:

"Congress shall have power * * * to regulate commerce with foreign nations, and among the several states."

"It is further claimed by plaintiff that this statute violates the following provisions of the state Constitution:

Section 17 of article 6, which provides:

"No tax or duty shall be imposed without the consent of the people or their representatives in the Legislature, and all taxes shall be equal and uniform."

Section 8 of article 11, which provides:

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same, to which the tax only shall be applied."

Section 2 of article 6, which provides:

"No person shall be deprived of life, liberty or property without due process of law."

[1-3] The particular point made by plaintiff is that the fees collected by the defendant for the inspection of oil are so largely in excess of the amount absolutely necessary to defray the expenses incident to inspection that they are, in effect, a revenue measure in disguise, and not a police measure, and that by reason of the amount collected being so much above the actual cost of inspection and being a revenue measure in disguise, it places a burden upon interstate commerce, which violates the provisions of the federal and state Constitutions, above set forth. It is further contended by plaintiff in his reply brief that sections 8 and 10 of article 1 of the Constitution of the United States should be considered together and construed together, and, when so considered and construed, the statute is violative of both sections. In considering whether or not a statute violated a constitutional provision, this court, in an early case, laid down the following rule:

"It should be constantly borne in mind that there are no limitations upon the legislative powers of the Legislature in this state, except such as are imposed by the state and federal Constitutions; that no Legislative act should be declared unconstitutional unless the conflict between its provisions and some principle of constitutional law is so plain and palpable as to leave no reasonable doubt of its validity; and that, where the language of a statute is susceptible of any reasonable construction which is consistent with the Constitution, that interpretation will be given it." In re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321, 322; State v. Thompson, 25 S. D. 148, 125 N. W. 567; In re McKennan's Estate, 25 S. D. 369, 126 N. W. 611, 33 L. R. A. (N. S.), 606; Id., 27 S. D. 136, 130 N. W. 33, 33 L. R. A. (N. S.) 620, Ann. Cas. 1913D, 745.

[4] Viewed in the light of this rule, we will consider this law in its relation to the above constitutional provision. It has been held that—

"Inspection laws are not, in themselves, regulations of commerce."

"The right to make inspection laws is not granted to Congress, but is reserved to the states." Patapsco Guano Co. v.

North Carolina Board of Agriculture, 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191.

"A state is within its governmental powers in requiring inspection, including tests as to quality, as a safeguard with regard to inflammable substances, * * * when found within its borders, or even when moving in commerce from state to state (there being no legislation by Congress upon the subject), is well settled." Pure Oil Co. v. Minnesota, 248 U. S. 158; 39 Sup. Ct. 35, 63 L. ed. 180; Texas Co. v. Brown, 258 U. S. 466, 42 Sup. Ct. 375, 66 L. Ed. —.

It has been held that—

"Goods brought into a state, not from a foreign country but from another state, having reached their destination and being held in storage awaiting sale and distribution, enjoying the protection which the laws of the state afford, may, without violation of the commerce clause be subjected to nondiscriminatory state taxation, even though still contained in original packages." American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 Sup. Ct. 365, 48 L. Ed. 538; Woodruff v. Parham, 8 Wall. 123, 19 L. Ed. 382; Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091, 29 L. Ed. 257; The Texas Company v. Brown, supra.

It is further held in these cases:

"That with respect to such substances, when they have passed out of interstate commerce, and have come to rest within the state, and have become a part of the general mass of property, or have become the subject of domestic commerce, the state may impose inspection fees substantially in excess of the cost of inspection, and thus make them a source of general revenue, is also free from doubt, other than that which may arise from its Constitution."

It has also been held that an excise tax, like the one we are now considering, which "combines regulation with revenue raising is not a valid objection from the standpoint of the Fourteenth Amendment." Gundling v. Chicago, 177 U. S. 183, 20 Sup. Ct. 663, 44 L. Ed. 725; Texas Co. v. Brown, supra.

It has also been held that the words "imports" and "exports," as used in the third clause of section 8 and the second clause of section 10 of article 1 of the Constitution of the United States, "applies only to articles imported from, or exported to foreign

countries." Woodruff v. Parham, supra; Pittsburg & Southern. Coal Co. v. Louisiana, 156 U. S. 590, 15 Sup. Ct. 459, 39 L. Ed. 544; American Steel & Wire Co. v. Speed, supra; Patapsco Guano Co. v. North Carolina Board of Agriculture, supra.

[5]   It is clear from the evidence in this case that plaintiff's petroleum products before they were taxed had passed out of interstate commerce, and come to rest within the state, and had become a part of the general mass of property within the state subject to domestic commerce, and were therefore liable to the inspection tax.

[6]   It is clear from the authorities above cited that our oil inspection law does not violate any one of the provisions of the federal Constitution above set forth, and we are unable to see how it can or does violate any two of the provisions when construed together.

[7]   For the same reason that this statute is not repugnant to section 1 of article 14 of the federal Constitution it must be held not repugnant to section 2 of article 6 of the state Constitution, which is, in substance, an enactment into the state Constitution providing that "no person shall be deprived of life, liberty or property, without due process of law."

[8]   That statutes like the one we are now considering are not repugnant to section 8 of article 11 of our state Constitution was ruled in State v. Thompson, 25 S. D. 148, 125 N. W. 567; In re McPherson, 104 N. Y. 308, 10 N. E. 685, 58 Am. Rep. 502; State ex rel v. Ross, 101 Kan. 377, 166 Pac. 505.

[9]   The only remaining question to be considered is:   Is this law repugnant to the provision of section 17 of article 6, which provides:

"No tax or duty shall be imposed without the consent of the people or their representatives in the Legislature, and all taxation shall be equal and uniform."

This court held in the recent case of Wheelon v. South Dakota Land Settlement Board, 43 S. D. 551, 181 N. W. 359, 14 A. L. R. 1145, that the words "and all taxation shall be equal and uniform" have been obliterated from the Constitution by the adoption of amended article 11, section 2, in November, 1918.

It will be observed that the case In re Hoffert, 34 S. D. 271

148 N. W. 20, 52 L. R. A. (N. S.) 949, which plaintiff has pressed upon our attention as decisive of this case, was decided by this court before the amended section 2 of article 11 of the state Constitution was adopted, which obliterated from section 17, article 6, the words "and all taxation shall be equal and uniform," and which expressly permits the taxation of occupations. There is therefore nothing in the present oil and inspection law repugnant to either the Constitution of the United States or the state of South Dakota.

The only relief asked for by the plaintiff in this case is by injunction, and is entirely prospective, and, as no part of this act in question violates any provision of the state or federal Constitution, plaintiff's application for an injunction will be denied.

POLLEY, J., dissenting.

Note—Reported in 192 N. W. 366. See American Key-Numbered Digest, (1) Constitutional Law, Key-No. 26, 12 C. J. Secs. 168-174; (2) Constitutional Law, Key-No. 48, 12 C. J. 220-221; (3) Constitutional Law, Key-No. 48, 12 C. J. 222; (4) Commerce, Key-No. 10, 12 C. J. Secs. 10 and 15; (5) Commerce Key-No. 40(3), 12 C. J. Sec. 25; (6) Commerce, Key-No. 51, 77, 12 C. J. Secs. 65 and 161; (7) Constitutional Law, Key-No. 296(1), 12 C. J. Sec. 1074, Inspection, Key-No. 2, 22 Cyc. 1365, 1368; (8) Taxation, Key-No. 303, 37 Cyc. 972-973; (9) Taxation, Key-No. 40(1), 37 Cyc. 729-731 and 732-733.