STATE ex rel. PARKER et al., v. YOUNGQUIST

(11 N. W.2d 84.)

(File No. 8669. Opinion filed September 10, 1943.)

(Original Proceeding)

**Stephens & Riter,** of Pierre, for Plaintiffs.

**Boyce, Warren & Fairbank,** of Sioux Falls, Amicus Curiae.

**George T. Mickelson,** Atty. Gen., and **E. D. Barron**, Asst. Atty. Gen., Defendant.

SICKEL, Circuit Judge. The plaintiffs are taxpayers and electors of the State of South Dakota. The defendant is the State Treasurer. The action was brought by plaintiffs as an original proceeding in this Court to prevent the defendant as State Treasurer from performing the duties imposed on him by Chapter 277, S. L. 1943, commonly referred to as the tithing law. This statute provides that ten per

cent of the gross receipts of eighteen state boards and commissions shall be transferred to the general fund of the state. The amount of the transfer is limited to $50,000 for any single board or commission in any fiscal year.

■ Our first consideration is the defendant's claim that the plaintiffs are not entitled to bring this action. It is the rule in this state that any taxpayer or elector may maintain a proceeding to restrain a public officer from the performance of an illegal act, where the Attorney General has refused to prosecute the action in the name of the state, and where the relief sought is a public matter, or one of public right. In such case it is not necessary that the taxpayer or elector have a special interest in the suit or suffer special injury to himself. Weatherer et al. v. Herron et al., 25 S. D. 208, 126 N. W. 244; White Eagle Oil & Refiining Co. v. Gunderson, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397; State ex rel. Bryant v. Dolan et al., 61 S. D. 530, 249 N. W. 923; State ex rel. Jensen v. Kelly, 65 S. D. 345, 274 N. W. 319.

■ It is admitted by the defendant that the plaintiffs are taxpayers and electors of the state and that the Attorney General refused to bring this action. The constitutionality of legislation affecting the use of public funds is a matter of public right. Therefore the plaintiffs are entitled to maintain this proceeding.

■ The next question is whether this law is an appropriation act requiring a two-thirds vote of the members of the legislature according to Article XII, Section 2, of the Constitution.

An appropriation is legislative sanction for the disbursement of the public revenue. In re Continuing Appropriations, 18 Colo. 192, 32 P. 272. The test of whether an act is an appropriation is whether the money may be paid or drawn from the state treasury on authority of the act. Humbert v. Dunn, 84 Cal. 57, 24 P. 111; Campbell v. Towner County, 71 N. D. 616, 3 N. W.2d 822; People ex rel. Colorado State Hospital v. Armstrong, 104 Colo. 238, 90 P.2d 522. The act in question authorizes no disbursement of public

revenue. No money may be drawn from the state treasury on authority of the act. By its terms it reduces the continuing appropriations of the eighteen separate governmental departments mentioned therein by means of the transfer of a part of their tax receipts to the general fund of the state where those funds are to be mingled with other tax collections and used to meet appropriations payable out of that fund. This law is not an appropriation of public money.

■■ Plaintiff claims that the act constitutes a diversion of highway taxes in violation of Article XI, Section 8, of the Constitution, see Laws 1939, c. 230. That section provides: "No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same, to which the tax only shall be applied, and the proceeds from the imposition of any license, registration fee, or other charge with respect to the operation of any motor vehicle upon any public highways in this state and the proceeds from the imposition of any excise tax on gasoline or other liquid motor fuel except costs of administration and except the tax imposed upon gasoline or other liquid motor fuel not used to propel a motor vehicle over or upon public highways of this state shall be used exclusively for the maintenance, construction and supervision of highways and bridges of this state."

The part of this section which relates specifically to the use of the highway funds was added by amendment at the general election in 1940. Since then all license taxes, registration fees and other charges for the operation of motor vehicles on the highways, and the proceeds from excise taxes on highway motor fuel must be used exclusively for highway purposes. Legislative authority over these funds is limited by the amendment to the enactment of administrative measures. The Legislature may establish new agencies or authorize existing officers, boards or commissions to use the funds for highway administration, maintenance, construction and supervision. It may change these agencies from time to time and it may vary the administrative procedure. None of these things were done by the act in

question. It merely diverts a part of the special highway funds to the state general fund, without providing any assurance that the diverted funds will be used exclusively for highway purposes as required by the constitution. It contains no appropriation or allocation of these special funds in definite amounts to designated departments of government for highway administration, facilities or services, with proper administrative regulations preventing the misuse of the funds. Neither has the act any provision for the return of unexpended balances to the highway fund. Instead, the statute places the transferred funds in the general fund where they "shall not be subject to any special use or uses." As a part of that fund the money will be used, not for highway purposes, but for the payment of miscellaneous appropriations, in violation of Article XI, Section 8, of the Constitution.

The Attorney General claims that the court must presume that sums. equivalent to the amount specified in the act had already been expended by the state for highway purposes, and that the state is entitled to reimbursement therefor. There might be some merit to this contention if it appeared that highway expenses had been paid out of the general fund illegally or by mistake, when they were properly chargeable to the special highway fund. In such circumstances it might be claimed with reason that the highway funds were being used for highway purposes if it also appeared that the amount of the diverted funds was fixed or ascertainable and corresponded with the amount of the misused general funds. In this case there is no claim of illegality or mistake in past highway expenditures from the general fund nor could such a claim be proved because highway expenditures always have been and still may be appropriated legally out of the general fund.

Chapter 277, S. L. 1943, also transfers to the general fund of the state a part of the receipts of the following boards and commissions: State Brand Board, the Game and Fish Commission, the State Board of Osteopathic Examiners, the State Board of Chiropractic Examiners, the State

Board of Dental Examiners, the State Board of Examiners in Optometry, the State Board of Chiropody Examiners, the State Nurses Examining Board, the State Board of Pharmacy, the State Board of Embalmers, the State Board of Cosmetic Therapy, the State Board of Barber Examiners, the State Board of Engineering and Architectural Examiners, the Abstracters Board of Examiners, the State Athletic Commission, the Board of Accountancy, the South Dakota Racing Commission. It is the plaintiffs' contention that these provisions of the act also violate Article XI, Section 8, because the funds of the above named departments have already been appropriated to other purposes.

■ The taxes imposed under the laws governing these various departments of the state government are collected for revenue, or under the police power for the purpose of regulation. There is no doubt about the right of the legislature to appropriate the proceeds of a revenue law to any lawful purpose, or to place the proceeds in the general fund. In re Opinion of the Judges, 50 S. D. 324, 210 N. W. 186. But it has been a general rule that license, privilege or occupation taxes may not be imposed under authority of the police power for revenue purposes, and that the licenses required of useful occupations can carry with them only such fee as is necessary to pay the expense of licensing and supervision. 17 R. C. L. 533; 33 Am. Jur. 336; Waters-Pierce Oil Co. v. Hot Springs, 85 Ark. 509, 109 S. W. 293, 16 L. R. A., N. S., 1035.

■ The above rule has been changed in this state by the 1918 amendment to Article XI, Section 2, of the Constitution. That amendment provides: "Taxes may be imposed upon any and all property including privileges, franchises and licenses to do business in the state. Gross earnings and net incomes may be considered in taxing any and all property, and the valuation of property for taxation purposes shall never exceed the actual value thereof. The legislature is empowered to impose taxes upon incomes and occupations, and taxes upon incomes may be graduated and progressive and reasonable exemptions may be provided."

The legislature has power under this amendment to impose taxes on privileges, occupations or licenses to do business, and the funds so collected may be appropriated for the purpose of regulation, or revenue, or in part for both. State ex rel. Botkin v. Welsh, 61 S. D. 593, 251 N. W. 189; Peterson Oil Co. v. Frary, 46 S. D. 258, 192 N. W. 366; State v. Thompson, 25 S. D. 148, 125 N. W. 567; State v. Doran, 28 S. D. 486, 134 N. W. 53.

The case of State ex rel. Botkin v. Welsh, supra, was an original proceeding in this court to determine the constitutionality of the Gross Income Tax Law. The tax levied under the provisions of that law was a tax on the privilege of engaging in an occupation, and the gross receipts of that occupation was the measure of the tax. It was claimed that Article XI, Section 1, of the state constitution prohibits the legislature from providing any other source of revenue than the ad valorem property tax to meet the ordinary expenses of the state. It was held that such interpretation was inconsistent with the 1918 amendment to Article XI, Section 2, referred to above. Under this decision, privilege and occupation taxes levied for the purpose of revenue are valid.

In Peterson Oil Co. v. Frary, supra, it was claimed that the law relating to the inspection of petroleum products was void because the inspection fees amounted to more than the expense of inspection. Forty-seven per cent of the inspection fees were used to pay the expense of the inspection and fifty-three per cent thereof remained in the state general fund and was used by the state for general purposes. It was held that "the state may impose inspection fees substantially in excess of the cost of inspection, and thus make them a source of general revenue" [46 S. D. 258, 192 N. W. 369], and that such a law which "combines regulation with revenue raising" does not violate constitutional provisions, and is valid.

The provision of Article XI, Section 8, of the Constitution which states that any law authorizing a tax "shall distinctly state the object of the same, to which the tax only shall be applied", does not conflict with this interpretation

of Article XI, Section 2, nor does it prohibit the legislature from changing the object of the tax from regulation to revenue by amendment of the law. It does prevent the diversion of taxes which have been levied or collected, or which are already on hand and appropriated to other purposes. White Eagle Oil & Refining Co. v. Gunderson, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397; In re Opinion of Judges, 59 S. D. 469, 240 N. W. 600; In re Opinion of Judges, 50 S. D. 324, 210 N. W. 186.

This brings us to the question of severability. In the case of Haines v. Rapid City et al., 59 S. D. 58, 238 N. W. 145, 147, the opinion quotes Cooley on Constitutional Limitations as follows: "if when the unconstitutional part is stricken out that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained."

Here the legislative intent was the transfer of a part of the gross receipts of various boards and commissions to the general fund of the state. Each transfer made by the act is a separate and distinct object, independent of any other. Therefore the invalidity of the provision for transfer of highway funds to the general fund does not affect the other provisions of the act.

Plaintiffs have filed in the office of Secretary of State a petition asking that this act be submitted to a vote of the electors of the state before going into effect. The defendant admits the filing of such a petition but claims that the law is not subject to the referendum under Article III, Section 1, of the Constitution. The question is whether the act is necessary for the support of the state government and its existing public institutions.

This law neither levies nor increases any tax. It appropriates no money. There is no declaration by the legislature that this law is necessary for the support of the state government or that other revenue of the state is insufficient, or that the funds affected by this act are necessary for replacement purposes. The purpose of this law is the diversion

of taxes from a special purpose to the general fund because it is equitable, not because it is necessary for the support of the state government. The law is therefore subject to the referendum. Hodges et al. v. Snyder et al., 43 S. D. 166, 178 N. W. 575; Johnson v. Jones, State Auditor, 48 S. D. 260, 204 N. W. 15; State ex rel. Martin et al. v. Eastcott, City Auditor, 53 S. D. 191, 220 N. W. 613.

■ The petition alleges, and the answer admits, that referendum petitions were presented to the Secretary of State on June 2, 1943, asking that this act be submitted to a vote of the electors of the state at the next general election; that the petitions contained the required number of signatures, was regular on its face and properly certified. Under these circumstances it was the duty of the Secretary of State, acting in her ministerial capacity, to file the petitions, which she did. This suspended the act until and unless it receives the approval of the voters of the state at the next general election. State ex rel. Coon v. Morrison, 61 S. D. 339, 249 N. W. 318.

The writ of prohibition will therefore be granted as prayed for in the plaintiffs' petition, without prejudice however to existing rights of interested parties to question the legality of the petitions by appropriate action.

All the Judges concur.

SICKEL, Circuit Judge, sitting for POLLEY, J., disqualified.