### Will McIntosh v. The State.

#### No. 4145.   Decided May 5, 1909.

**1.—Murder—Charge of Court.**

Where upon trial for murder the court properly charged upon every grade of culpable homicide as well as on the law of self-defense, there was no error.

**2.—Same—Indictment—Constitutional Law—Special Term of Court.**

The Act of the Twenty-ninth Legislature p. 116, providing for special terms of the District Court, is constitutional. Following Ex Parte Boyd, 50 Texas Crim. Rep., 309, and other cases.

**3.—Same—Emergency Clause—Indictment.**

Where upon trial for murder, objection was made to the Act of the Twenty-ninth Legislature p. 116, as being invalid ₁ and unconstitutional, because the act did not pass by four-fifths of the members of the Legislature under n emergency clause, but it appeared from the record that the indictment was found after ninety days from the adjournment of the Legislature, there was no error.

**4.—Same—Regular Session of the District Court—Special Term.**

Where upon trial for murder, the district judge had ordered a special term of the district court, empaneled grand and petit jurors and tried defendant in all respects in conformance with the law, the objection that tɦe district court in said district was in session in an adjoining county was not tenable, it not being shown that any injury resulted. The judge had the right to convene a special term and to adjourn or suspend the session of his court in another county.

**5.—Same—Jury and Jury Law—Race Discrimination.**

Where upon trial for murder defendant moved to quash the indictment on the ground of race discrimination, and the record did not show any evidence to support defendant's contention, and the court certified that a jury commissioner testified that no such discrimination occurred, there was no error,

**6.—Same—Continuance—Race Discrimination—Change of Venue.**

Where upon trial for murder the defendant made application fo: continuance to the next term of court on the ground of race prejudice, and did not apply for a change of venue supported by the affidavit of himself and two compurgators, the overruling of his motion for continuance could not be considered on appeal.

**7.—Evidence—Practice.**

Where upon trial for murder the State placed on the witnes s and the widow of the deceased and proved by her the death of her husband and his initials, and there was no objection by the defendant at the time; that the court then adjourned and upon reconvening defendant objected to said testimony because it was calculated to inflame the minds of the jury, and was designed for such purpose, which objection was overruled, there was no reversible error.

**8.—Same—Sufficiency of the Evidence.**

Where upon trial for murder the conviction assessing the death penalty was well justified by the evidence, there was no error.

Appeal from the District Court of Lamar. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*E. P. Scott,* for appellant.—A continuance is addressed to the sound discretion of the court, and may be granted on account of race discrimination and prejudice. Daughtery v. State, 33 Texas Crim. Rep., 173; 26 S. W. Rep., 60.

*F. J. McCord,* Assistant Attorney-General, for the State.—Cited cases in the opinion.

RAMSEY, JUDGE.—Appellant was indicted at a special term of the District Court of Lamar County, Texas, charged with the murder of one W. R. Draper. This indictment was returned into court on the 24th day of February, 1909. He was at the same special term of said court put upon his trial, and thereafter, on to wit, March 1, 1909, convicted of murder in the first degree, and his punishment assessed at death.

1. The evidence in brief showed that appellant was in love with one Mary Boyd, and had been urging her to marry him, which she refused to do; that thereupon he assaulted her, and threatened to kill her, and that she complained to the officers in Paris, and a warrant was issued thereon for appellant's arrest. It is shown in evidence that to this witness, and several others, he made threats to kill deceased, as well as one Matthews, if they should undertake to arrest him, and spoke to a number of the witnesses about his proficiency and skill as a shot with a rifle, and particularly of his ability to shoot such a gun from a hip position, and called their attention to some rifles in a store at Paris, and stated that he would break in and obtain one of such guns. It is shown in evidence that he did break into the store and

obtain a rifle, with an iron bar kept on Mary Boyd's place, and identified by her and other of the witnesses. It is also shown in evidence that just about the time of the homicide he bought twenty-five cartridges, spoken of by the witnesses as No. 44's. Matthews and other witnesses testified that on the night of the homicide, meeting appellant on the street, he accosted him with the statement that they had a warrant for him, and that almost immediately on being accosted he presented his weapon; that he called out to him to put it up and not shoot, and that before either he, Matthews, or Draper, had drawn a pistol or made any demonstration, he fired one shot, and before any return of the fire was possible, and before any demonstration by Draper, he, appellant, fired a second shot, striking Draper in the stomach, the ball going through his watch pocket, from which he died within the course of a few minutes. Appellant in substance denied having made any threats against the deceased, and claimed that, at the time he fired the shot, he thought that he was shooting at Albert Pickens and another negro, whom he claimed had theretofore assaulted him and threatened to kill him; that at the time of the shooting they called out to him to hold up, and he thought they were in the act of assaulting him, because they had threatened to take his life, and that his act of firing the gun at the time of the homicide was solely in self-defense.

2. The court instructed the jury in respect to every grade of culpable homicide, as well as very fully on the law of self-defense. There is in the motion absolutely no complaint of the charge of the court in these respects, and our own reading of it convinces us that it was not subject to any substantial objection or criticism.

3. The main questions relied upon for a reversal relate to the supposed insufficiency of the indictment, and challenges the constitutionality of the Act of the Legislature under which said term was held, the indictment preferred and the trial had. All the precedent preliminary steps leading up to the organization of this term of the court are quite fully set out in the record. It appears that on the 10th day of February, 1909, the judge of that, the Sixth Judicial District of this State, directed and ordered a special term of said court to be convened in the city of Paris on Monday, February 22d, and to continue in session for three weeks. The order stated that, among other business which would be transacted, would be the drawing of a grand jury to inquire into the matter of whether appellant should be indicted for the offense of murder, and if indicted he would then be tried upon such indictment for said offense. The clerk was directed to issue under the seal of the court a certified copy of the order, and deliver same to the sheriff of Lamar County, who was directed to post a copy of same at the courthouse door of said county, and cause same to be published in some newspaper published therein, and also, if practicable, cause to be furnished to said McIntosh a copy of said order, or furnish him with information of its existence. On February 22, 1909, an order was entered in open court appointing F. G. Johnson, J. F. Pettigrew and

Joel Gunn jury commissioners for this special term of court, who, the order recites, took the oath of office, and were duly organized and instructed as to their duties in general, and were directed by the court to select sixteen persons to serve as grand jurors for the said term of court, and also to select petit jurors for the second and third weeks of said term of court, of seventy-five persons for each week, as well as a special venire list of fifty persons for said term of court, to be selected and return made thereon as the law provides. Proper return was made by these jury commissioners on the same day, and the grand jurors so chosen and selected were directed to be summoned to appear before the court on the following Wednesday, February 24, 1909. While presented in many ways, the substantial contention of appellant is that the court erred in refusing to quash the indictment, dissolve the proceedings, and set aside the grand jury, as well as the special venire ordered in the case for the reason and on the ground that the Act of the Twenty-Ninth Legislature, approved April 13, 1905, chapter 83, page 116, is invalid and unconstitutional on two grounds: First, that said Act was invalid and unconstitutional on the ground that it clothed the district judge with legislative functions; and second, that, while the Act has the emergency clause, yet it was never read on three several days, nor was it passed by four-fifths of the members of the Legislature. The first question was distinctly ruled adversely to appellant in the case of Ex parte Boyd, 50 Texas Crim. Rep., 309, as well as in the case of Ex parte Young, 49 Texas Crim. Rep., 536; 15 Texas Ct. Rep., 852. There is no merit in the second contention for the reason that whatever may have been the rule, if the enforcement of this Act had been attempted within less than ninety days from the adjournment of the Legislature, the vote by which the Act was passed, or other matters leading up to its passage and approval, can not affect appellant as here presented.

4. Closely allied, and growing out of said question, is another claim and contention of appellant, that the indictment should have been quashed for the reason that the District Court of this Judicial District was in session in the adjoining county of Fannin at the same time as the special term of court under which he was sought to be convicted, and the contention is made, as we understand, that the court could not be in session at two different places at the same time. It is not denied, nor is it claimed, that Honorable Ben H. Denton, the legally elected judge, was not present throughout the trial, or that any injury resulted from the fact, if it be a fact, that a District Court was being held in the adjoining county. It is not disclosed by the bill of exceptions whether the court at Bonham was in recess or not, but it is clear to us that if the legally elected district judge was sitting in Paris, Lamar County, Texas, under a valid law, and under notice duly given, that the appellant could not claim that he ought to have been somewhere else. Not only the Act above quoted permits, but the constitution also authorizes, special terms of court in such manner as may be provided

by law, and the appellant is in no position to complain, and claim the act of the grand jury indicting him was illegal because of the personality or the person occupying the district bench. He was the district judge, and the law empowered him to convene a special term of the District Court, and for that purpose he might, if he saw proper, adjourn another court at a different place in his district, or suspend the session of said court in such other county, or recess the court in order to hold a special term, if public necessity and the public good required it.

5. Appellant sought to quash the indictment on the further ground that there was error, as well as harm, in selecting the jurors, the special venire and the jury commissioners. That the jurors were selected from two distinct and separate races of citizenship of Lamar County. He avers in this connection that the commissioners had two separate lists from which they chose the grand jurors, one containing the names of white citizens, qualified jurors of Lamar County, Texas, and one containing the names of negro citizens, qualified jurors. That the names of the negroes were not in proportion to the percentage of the voters of Lamar County, and that the drawing of same was manifestly in contravention of, and contrary to, the law of the State of Texas. He further avers that the grand jury which indicted him consisted of one negro and eleven white men; that the selection of the jurors was made in contravention of the laws of the State of Texas, but was made as nearly as possible to comply with the holding of the Supreme Court of the United States with reference to discrimination against the colored race. In approving this bill the court says: "This bill, given with the explanation that the facts, as shown by the testimony of F. G. Johnson, one of the jury commissioners appointed, does not sustain this bill, and his testimony, and the affidavits of Pettigrew and Gunn attached to the State's contest, is here referred to and made a part of this bill. They show that they did not discriminate against the negro race in any manner, but selected the grand jury from both races." Accepting the statement of the learned court below as correct, which we do not hesitate to do, as in law we must do, it is perfectly obvious that appellant's contention is without merit. In this connection it should be stated that there was no evidence, so far as the record discloses, to sustain appellant's contention and support as true the facts which he avers.

6. Another matter urged by appellant is the action of the court in overruling his application for a continuance. This application was not sought to secure the attendance of any witness, or to procure any testimony, but on a wholly different ground and for wholly different reasons. In substance it is averred that appellant is a negro, and that the white race in Lamar County, in wealth, learning, number and influence, largely predominate over the negroes, and that the enforcement of the law is exclusive in the hands of the white race; that deceased was an officer, and a man of great influence in Lamar County,

and had a large circle of acquaintances, and that there had been generated in the public mind of the citizens of the county a most intense and bitter prejudice against him, and that many people in the county thought, and had publicly declared, that he should be hanged whether guilty of murder or not. This matter is elaborated at great length and detail, with the further suggestion that the convening of the special term of court, while not in obedience to the above-mentioned widespread and bitter prejudice, so far as the court is personally concerned, that, so far as appellant is concerned, it is actually responsive to the clamor for his life, and that, if the case should go over to the March term of court, the public mind would have calmed, and the case could have been disposed of dispassionately. What the facts are in respect to this matter we are not very definitely advised. If they were true, appellant's remedy would have been to have made his application for a change of venue. That he could not reach the same by application for continuance is obvious. If, as the court below states in approving the bill, appellant's contention was correct, it would never be necessary for a defendant to file an application for a change of venue. He could, by filing an application for continuance, get the change of venue, or indefinitely delay the trial without any compliance at all with the law regulating change of venue in criminal cases. It is well settled in this State that an application for change of venue will not be granted unless appellant brings himself within the terms of the statute by filing his own affidavit and that of two compurgators. If appellant's contention were correct, these wise provisions of the law would be absolutely nullified. The contention seems to be utterly without merit.

7. Appellant also excepted to the action of the district attorney in producing as a witness the widow of deceased, who testified merely to the death of her husband and the date thereof. It is claimed that this was prejudicial to appellant, in that Mrs. Draper was not introduced as a witness for the purpose of developing or proving any material fact or issue in the case, but her introduction in the case was designed and calculated to excite and inflame the minds of the jury against appellant. The court below refused to approve the bill tendered by counsel for appellant, for the reason, as stated by him, that it does not correctly recite the facts. The court then proceeds as follows: "The facts are these, that Mrs. Draper was placed on the witness stand by the State just before the noon hour, and proved by her the death of her husband and his initials, and no objections whatever was then taken by counsel for the defendant, but when court reconvened after noon the counsel objected, for the reasons substantially as above set out." It does not appear that any further testimony was given by Mrs. Draper, and here the matter seems to have rested. We can see no error in the action of the court, and in the light of the explanation to the bill appelant's contention is wholly without merit. While reiterated in many forms, and presented in many phases, these are the only matters of any moment presented in appellant's motion for a new trial or by bills

of exception.   We have carefully examined the record, and the case seems to have been tried with exceptional care, and the appeal is, as we believe, in the light of the former holdings of this court, without merit.   The killing, as we view the record, was unprovoked, and in pursuance of a previously formed design, and the verdict of the jury, severe as it is, is well justified by the evidence.

Finding no error in the proceedings of the court below, the judgment of conviction is affirmed

*Affirmed.*