This is a mandamus proceeding in which it is sought to compel the defendants, constituting the state board of administration, to execute a conveyance transferring to Williams county certain real property, described in the application for the writ. The action is brought on the relation of the state's attorney and the board of county commissioners.
The material facts are stipulated. In 1907, the legislature established an experimental station near Williston, in Williams county. Chapter 122, Sess. Laws 1907 and §§ 1629-1632, Comp. Laws 1913. It was provided in the act, as a condition of the establishment of the station, that there be conveyed by deed or warranty to the state, without cost, not less than one hundred sixty acres of land lying not more than two miles distant from the city of Williston. Later, and in conformity with the act, the real property involved in this law suit was conveyed by a deed of warranty to the state of North Dakota, and there was, thereafter, established and operated on the land an irrigation and dry farming experimental station. The station was operated in connection with, and under the supervision and control of the North Dakota Agricultural College, until about April 1, 1925. The conveyances were made by private citizens and corporations in Williams county, naming the state as grantee in the instruments. Each deed of conveyance recites a consideration. It is stated in the briefs of counsel for the defendants, and the statement is not challenged, that the property was purchased from the owners by a fund raised through public subscription; and that the subscribers were citizens of the city of Williston and residents of Williams county, interested in the establishment and operation of an experimental station near Williston.
At its regular session in 1925, the legislature enacted chapter 218, Sess. Laws, 1925, directing the state board of administration, the defendants in this proceeding, to convey without consideration all the real property theretofore used by the station to the county of Williams to *Page 531 
be used by the latter for the purposes of a county poor farm. The board of administration refused to execute the conveyance and this proceeding was instituted to compel the transfer.
The trial court issued a writ and the defendants appeal.
The contention of the defendants is that chapter 218, Sess. Laws 1925, is violative of §§ 159 and 160 of the state Constitution and of § 10, article 1, of the Constitution of the United States. The defendants maintain that the transfer of the real property in controversy without consideration, as directed in the statute, would be in contravention of § 159, supra, which provides "all land, money or other property donated, granted or received from the United States or any other sources, for a University, School of Mines, Reform School, Agricultural College . . . or other educational or charitable institution or purpose, and the proceeds of all such lands and other property so received from any source shall be and remain perpetual funds . . . which . . . shall be inviolably appropriated and applied to the specific objects of the original grants or gifts. . . ." The defendants contend that the lands which were donated for the use of the experiment station were gifts to the state for an "educational purpose," within the foregoing constitutional provision, and that, in consequence, the state holds the title as trustee for the use and benefit of education in agricultural science in the state. It is then urged that the legislature has not the power to divert the property or its proceeds to any object or purpose not educational in character within the meaning of this section of the Constitution.
The district court held that the property was not donated to the State for an "educational purpose" within the meaning of § 159, supra; but it did not define the purpose for which it deemed the lands in suit to have been transferred. As the defendants present the issue, the main and controlling question appears to be whether the establishment and maintenance of the experimental station at Williston is an "educational purpose" within the meaning of that phrase as used in the Constitution. The trial court held that it was not, and said that the term educational "as it appears in said § 159, is used in a restricted sense." The extent or character of the restriction is neither suggested nor defined.
The station was operated, as has been pointed out, under the control and direction of the Agricultural College; in point of fact, the station is nothing more or less than an extension of the work of that institution. *Page 532 
Many similar stations have been established since statehood; but all of them have been operated under the direction of the Agricultural College. Uniformly the object and purpose of all has been, and still is, to conduct experiments under different soil, climatic or atmospheric conditions, to the end that the farming population of this state may acquire increased knowledge and a better understanding of the application of correct scientific principles in the business of agriculture. It is difficult to see why such purpose is not "educational," within the meaning of the constitution, just as much as is the maintenance of a dairy farm, a demonstration farm and of apparatuses for conducting experiments near or on the campus of the Agricultural College at Fargo. The dissemination of knowledge, through extension departments, both at the University and the Agricultural College, has, for many years, been the policy of this state, directly sanctioned by regular legislative appropriations for carrying on this work. Nobody would contend that the money thus expended was not used in educational work, or for an "educational purpose." The maintenance of experimental farms or stations, under express legislative sanction, in different parts of the state, and under the supervision of the Agricultural College, is simply another aspect of the policy of spreading scientific or other knowledge through extension departments and extension work. We are constrained to the conclusion that the donation of the land to the state in the case at bar was distinctly for an "educational purpose" within the meaning of section 159 of the Constitution. It would seem that the United States Government has recognized that the use of public funds for maintaing agricultural experiment stations is a use for a purpose which is educational in character. See § 8878, U.S. Comp. Stat. 1 Fed. Stat. Anno. 2d ed. p. 212; and see also Hanks v. D'Arcy, 156 Ga. 55, 118 S.E. 656; Bowers v. Hanks, 152 Ga. 659, 111 S.E. 38.
While the defendants do not concede the power to sell the property involved in this litigation, they contend that if such power exist, it must be exercised in conformity with § 160, of the state Constitution, which regulates the appraisal and sale of public lands for the benefit of the University, the Agricultural College, etc.; and that separate accounts shall be kept of the funds thus received. It is urged that the state of North Dakota, having received a gift of land from any source for any purpose specified in § 159, may not convey such property without *Page 533 
consideration, or give it away; that the value thereof, under the Constitution, is the perpetual possession of the state for educational purposes; and that if a power of transfer exist, the sale must be for a fair and a valuable consideration, and the proceeds must be held and used for the purpose prescribed in the Constitution.
Section 153 of the Constitution provides that certain lands, and the proceeds thereof, intended for the support of the commonschools, shall "remain a perpetual fund for the maintenance of the common schools of the state. It shall be deemed a trust fund, the principal of which shall forever remain inviolate. . . ." In this section "gifts and donations to the state for common schools" are distinctly and expressly recognized as a possible source of such trust fund. In § 154 it is provided that the interest and income of the fund shall be "faithfully used and applied each year for the benefit of the common school." Section 155 prescribes how lands granted by the United States for the support of the common schools may be sold; and § 158 prescribes the terms and conditions of sale and of payment. It will be noticed that the Constitution has thus far dealt only with lands and grants for the common schools. In § 159 another and a different class of schools and institutions is considered, viz.: the University, the Agricultural College, etc. Again we find the same provision for perpetuity, and the same characterization of the fund as a "trust fund" as in § 153, dealing with land grants or gifts for the common schools. Here the primary source of the fund is, of course, land grants from the United States. This was known to the makers of the Constitution; but they anticipated, as a possible source, gifts or donations from individuals, just as they had done in the case of the common schools, and provided that "all land, money or other property donated, granted or received from the United States or any other source . . . shall be inviolably appropriated and applied to the specific objects of the original grants or gifts." The phrase "from any source" suggests that the very contingency which here occurred — a gift of land or property by private citizens for educational purposes — was in the minds of the framers of the Constitution.
We are unable to draw any distinction, respecting the nature of the trust imposed upon the property, based on the source of the land or grant. Whether from public county or private gift, the property is equally impressed with a trust, and must be "inviolably appropriated *Page 534 
— to the specific objects of the original grant or gifts." It will not be seriously urged that the legislature could give away the land appropriated or granted by the Federal government for the use of the common schools, or the Agricultural College. The invalidity of such an attempted donation would be predicated not only upon the proposition that it violated the compact with the United States; but also and as well upon the explicit provisions of the Constitution which effectively prohibit such alienation. We are convinced that the framers of the Constitution intended that gifts from private persons should, in this respect, be protected against dissipation by the same safeguards which were thrown about grants from the United States.
We think the language of § 159 manifests a clear intention that any money or property thus received as a donation, should be kept "inviolably appropriated and applied" to the object the donors intended to further. The property which the legislature attempts to give away by chapter 218, Sess. Laws 1925, is trust property, held by the state for specific objects. As well might the law making body order a conveyance of the lands given the state by the United States for the use of the common schools or the Agricultural College. The property is not theirs to give.
The statute furnishes no authority for the transfer here sought to be compelled. The judgment of the trial court is reversed and the writ is dismissed.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.