**Douglas J. KANALY, Patrick S. Konechne, Dennis L. Lihs, Robert McBride, Donald Van Cleave and Joseph W. Wolf, Plaintiffs and Appellants,**

v.

**STATE of South Dakota, By and Through its Governor, William J. JANKLOW, the South Dakota Board of Regents and the Board of Charities and Corrections, Defendants and Appellees.**

No. 14716.

Supreme Court of South Dakota.

Argued Nov. 27, 1984.

Decided May 29, 1985.

Steven M. Johnson of Brady, Kabeiseman, Reade & Johnson, Yankton, for plaintiffs and appellants; Celia Miner of Brady, Kabeiseman, Reade & Johnson, Yankton, on brief.

Gary F. Colwill of Schmidt, Schroyer, Colwill & Zinter, P.C., Pierre, for defendants and appellees; William Janklow, Governor, State of S.D., Grant E. Gormley, Chief Deputy, John W. Bastian, Asst. Atty. Gen., and James E. Carlon of Gors, Braun & Carlon, Pierre, on brief.

Charles Lacey, Sioux Falls, amicus curiae on behalf of Oscar W. Hagen, Robert R. Weber, and Raymond Martinmaas.

HENDERSON, Justice.

## ACTION

This is an appeal from an order granting defendants-appellees partial summary judgment. The trial court held that no genuine issue of material fact existed as to the constitutionality of Senate Bill 221/1984 and that said bill did not violate provisions of the Enabling Act. Senate Bill 221/1984, now found in 1984 S.D.Sess.Laws ch. 138 and hereinafter referred to as S.B. 221, closed the University of South Dakota-Springfield (USD/S) and transferred control of the facilities to the Board of Charities and Corrections without consideration. We affirm in part, reverse in part, modify in part, and remand for hearings as herein ordered.

## PARTIES

Plaintiffs Van Cleave, McBride, Konechne, Lihs, Wolf, and Kanaly are resident citizens and taxpayers of the State of South Dakota. Plaintiff Wolf, in addition to the above, was a student enrolled at USD/S for the Spring 1984 semester, who has not completed the educational program for which he enrolled. Plaintiff Kanaly, in addition to the above, was a tenured faculty member at USD/S.

## FACTS

In 1881, the Dakota Territorial Legislature created a normal school at Springfield along with other normal schools within its boundaries. In 1883, John A. Burbank deeded twenty acres in fee simple to the territory for the normal school at Springfield. On February 22, 1889, the United States Congress passed the Enabling Act (Ch. 180, 25 Statutes at Large 676), which allowed the territory to be admitted to the Union as a state upon construction and ratification of a state constitution. In November 1889, South Dakota was so admitted to the Union.

Several provisions of the Enabling Act empowered the new state to designate and dedicate various acreages of federal land to different educational institutions on the condition that the proceeds of any disposition constitute a permanent fund for the support of the public schools for which the land had been granted. The South Dakota Constitution, adopted in 1889, mirrored the permanent trust fund requirement of the Enabling Act. Article VIII, § 7, of the South Dakota Constitution provides that all

lands or money received for educational or charitable institutions from the United States or other sources, and the proceeds therefrom, shall remain perpetual funds, and shall be inviolably used for the specific objects of the original gifts.

In response to the Enabling Act's educational dedication of lands provisions, the governor and legislature selected and dedicated 40,000 acres for the normal school at Springfield. The school has operated, with changes in curriculum, since this time until the enactment and signing of S.B. 221 on March 9, 1984.

S.B. 221 closed USD/S at the end of the Spring 1984 semester, provided for graduation of those qualified to do so, changed the college into a minimum-security prison, transferred control of the Springfield prison to the Board of Charities and Corrections without payment therefor, gave that Board the power to convey the facilities if done before May 1, 1984, and declared an emergency so the bill would be effective when passed and approved by the Legislature and signed by the governor.

Plaintiffs-appellants responded to the execution of S.B. 221 by filing a Verified Complaint and Writ of Prohibition on May 28, 1984. The trial court granted an Alternative Writ of Prohibition on that day prohibiting the Board of Regents and the Board of Charities and Corrections from transporting and/or conveying any of the property at, or formerly of, USD/S. The complaint alleged that S.B. 221 was unconstitutional because it violated the perpetual trust fund provisions of the Enabling Act and Article VIII, § 7, of the South Dakota Constitution; violated Article XIV, § 3, of the South Dakota Constitution by transferring control of USD/S from the Board of Regents to the Board of Charities and Corrections; violated Article I, § 10, of the United States Constitution and Article VI, § 12, of the South Dakota Constitution by impairing USD/S bond contracts (impaired obligation of contracts); violated Article III, § 21, of the South Dakota Constitution because it embraces more than one subject in the body of the bill; and violated Article

III, §§ 1 and 22, of the South Dakota Constitution by unnecessarily declaring an emergency.

The trial court on June 13, 1984, entertained a motion to quash the Alternative Writ of Prohibition and decided that it should be vacated except for the provision preventing the sale of USD/S under the authority of S.B. 221, Section 5. The trial court, in its summary judgment decision discussed below, later determined the controversy surrounding Section 5 to be moot because no conveyance had been made before the May 1, 1984 deadline, therefore no Writ of Prohibition remains outstanding. The trial court next entertained appellees' motion for summary judgment and held on September 21, 1984, that no genuine issue of material fact existed as to the constitutionality of S.B. 221 but that certain issues, later dismissed by plaintiffs, should be tried. Those issues dismissed, and thus not before this Court, were a) breach of employment contract rights, b) the unlawful taking of private property, and c) due process considerations. It is from this partial summary judgment that appellants now appeal.

This case is of great constitutional magnitude and importance to education and its funding in the State of South Dakota. We address five separate issues.

### DECISION

#### I.

DOES SENATE BILL 221 VIOLATE THE PROVISIONS OF THE PERMANENT TRUST FUND CREATED BY THE ENABLING ACT AND ARTICLE VIII, § 7, OF THE SOUTH DAKOTA CONSTITUTION? WE HOLD THAT IT DOES.

■ Section 11 of the Enabling Act provides the conditions under which the lands granted the State of South Dakota for educational institutions by the United States must be held and managed. In part, it provides:

The state may also, upon such terms as it may prescribe, grant such ease-

ments or rights in any of the lands granted by this act, as may be acquired in privately owned lands through proceedings in eminent domain: provided, however, that *none of such lands, nor any estate or interest therein, shall ever be disposed of* except in pursuance of general laws providing for such disposition, nor *unless the full market value of the estate or interest disposed of,* to be ascertained in such manner as may be provided by law, *has been paid or safely secured to the state.*

With the exception of the lands granted for public buildings, *the proceeds from the sale and other permanent disposition of any of the said lands and from every part thereof, shall constitute permanent funds for the support and maintenance of the public schools and the various state institutions for which the lands have been granted....*

The lands hereby granted shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States whether surveyed or unsurveyed, but shall be reserved for the purposes for which they have been granted. (Emphasis supplied.)

Section 17 of the Enabling Act then grants in trust various acreages of land to the different educational institutions and specifically grants 80,000 acres for state normal schools. Section 17 further provides: "And the lands granted by this section shall be held, appropriated, and disposed of exclusively for the purposes herein mentioned, in such manner as the [legislature] ... may severally provide."

The South Dakota Constitution also contains a provision regulating the management of educational land and property. In Article VIII, § 7, the constitution commands:

All lands, money or other property donated, granted or received from the United States or any other source for a university, agricultural college, normal schools or other educational or charitable institution or purpose, and *the proceeds of all such lands and other property so* received from any source, shall be and remain perpetual funds, the interest and income of which, together with the rents of all such lands as may remain unsold, shall be inviolably appropriated and applied to the specific objects of the original grants or gifts. The principal of every such fund may be increased, but shall never be diminished, and the interest and income only shall be used. Every such fund shall be deemed a trust fund held by the state, and the state shall make good all losses therefrom that shall in any manner occur. (Emphasis supplied.)

That these provisions create a special, permanent and perpetual trust of all land, money, property, and proceeds of the same, donated to the state for educational institutions by the United States and individuals alike and that the state is the trustee is beyond question. Such a conclusion is dictated by the strong and unequivocal language of the provisions themselves and this Court has long acknowledged the permanent trust relationship, *In re State Bonds,* 7 S.D. 42, 63 N.W. 223 (1895), and that trust management is controlled by the constitution, *Heston v. Mayhew,* 9 S.D. 501, 70 N.W. 635 (1897). The specific object of the original grant and gift for the normal school at Springfield, later renamed USD/S, was for education. Other courts have also recognized the trust relationship created by Federal Enabling Legislation and state acceptance of educational lands pursuant thereto. Such a procedure has been said to create an "irrevocable compact," *Oklahoma Educ. Ass'n, Inc. v. Nigh,* 642 P.2d 230, 235 (Okla.1982); a "solemn agreement," *Andrus v. Utah,* 446 U.S. 500, 507, 100 S.Ct. 1803, 1807, 64 L.Ed.2d 458, 464 (1980), *reh'g denied,* 448 U.S. 907, 100 S.Ct. 3051, 65 L.Ed.2d 1137 (1980); and a "contract" between the accepting state and the United States, *State v. Platte Valley Pub. Power & Irrigation Dist.,* 147 Neb. 289, 296, 23 N.W.2d 300, 306, 166 A.L.R. 1196 (1946). The beneficiaries of this trust, compact, and contract created and established by the Enabling Act and

the South Dakota Constitution are the various educational institutions of this state. *Schelle v. Foss,* 76 S.D. 620, 83 N.W.2d 847 (1957). The beneficiaries do not include the general public, other governmental institutions, nor the general welfare of this state. "Congress did not intend that the lands granted and confirmed should collectively constitute a general resource or asset like ordinary public lands held broadly in trust for the people, or that the proceeds should constitute a fund like moneys raised by taxation for 'general purposes.'" *United States v. Ervien,* 246 F. 277, 280 (8th Cir. 1917), *aff'd,* 251 U.S. 41, 40 S.Ct. 75, 64 L.Ed. 128 (1919).

With the foregoing parameters of the trust, its corpus and its beneficiaries in mind, can it now be asserted that the lands donated by the United States for the normal school system and the land deeded by John A. Burbank for the normal school at Springfield can be transferred *without consideration* to the Board of Charities and Corrections for a prison facility without violating the provisions of the permanent trust fund created by the Enabling Act and Article VIII, § 7, of the South Dakota Constitution? We decide that this cannot be and reverse the trial court's determination in this regard.

In *State v. Murphy,* 54 N.D. 529, 210 N.W. 53 (1926), land was deeded to the state for the use of the North Dakota Agricultural College. Legislation later attempted to convey that land *without consideration* to the county for use as a poor farm. The North Dakota Supreme Court held the legislative gift to be in violation of constitutional perpetual trust fund provisions identical to the ones here in question. The Court stated, in effect, that the state could not give away the trust property. Neither can this state legislature give away lands or permanent funds created for the support and maintenance of the public

schools. These lands, and any proceeds therefrom, must be applied to the object of the original grant or gift.

In the present case, we also declare the legislative transfer of trust property to another state governmental agency, without compensating or reimbursing the trust fund for the full market value of the transferred property, to be unconstitutional and in violation of the Enabling Act. Although the legislature is empowered to convey, convert, or transfer trust property, it cannot do so in a manner that diminishes the trust fund's principal. It is the duty of the state, as trustee, to preserve the fund's principal and thus it cannot give away trust property. Therefore, any disposition of the land, buildings, or other property or interests of the former University of South Dakota-Springfield must be made for the full market value and the proceeds delivered to the trust. Thus, the transfer from the Board of Regents to the Board of Charities and Corrections in this case was unconstitutional and violative of the Enabling Act.[1] To correct these legal impediments, the legislature will have to reimburse the trust fund for the full market value of the property and interests transferred to the Board of Charities and Corrections from USD/S. Whether this should be done through an appropriation or other additional legislation is a determination for the legislature.

The existence at the City of Springfield of an institution of higher education is not required by the Enabling Act or the constitution of this state. A perpetual trust fund for school purposes is one thing; a perpetual school is quite another. Thus, the legislature may decide to close this institution at the City of Springfield and convert the property into other trust assets *provided the trust fund is not thereby impaired.* The trust and all proceeds delivered thereto must hereafter be perpetually held and used in a separate fund[2] for the support

1. The legislature's gratuitous transfer of the land granted by the United States violates the perpetual trust provisions of both the Enabling Act and the South Dakota Constitution, whereas the legislature's gratuitous transfer of the land

deeded by John A. Burbank in 1883 violates the trust provisions of the South Dakota Constitution only.

2. *See* S.D. Const. art. VIII, § 8.

and maintenance of a curriculum and/or educational programs associated with a normal school and the educational programs historically held at USD/S and now conducted at other South Dakota institutions of higher education.

As noted by appellees in their Application of Stay addressed to this Court, the trial court has not conducted a complete adjudication of the extent of the trust diminishment or impairment. With appellees' assertion, we agree, and we remand to the trial court to conduct hearings concerning the nature and extent of the transfers here in question and the full market value of all property or interests so transferred. If the legislature does not provide for the reimbursement of the trust fund by the end of the 1986 legislative session, proceedings may be commenced to seek appropriate relief from the unconstitutionality of this legislation.

## II.

DOES SENATE BILL 221 VIOLATE ARTICLE XIV, § 3, OF THE SOUTH DAKOTA CONSTITUTION BY TRANSFERRING CONTROL OF USD/S FROM THE BOARD OF REGENTS TO THE BOARD OF CHARITIES AND CORRECTIONS? WE HOLD THAT IT DOES NOT BECAUSE THE LEGISLATURE HAS EFFECTIVELY CLOSED USD/S BY THE POWER OF THE PURSE.

South Dakota Constitution Article XIV, § 3, provides:

The state university, the agriculture college, the school of mines and technology, *the normal schools*, a school for the deaf, a school for the blind, and all other educational institutions that may be sustained either wholly or in part by the state *shall be under the control of a board* of five members appointed by the Governor and confirmed by the senate *under such rules and restrictions as the Legislature shall provide*. The Legislature may increase the number of members to nine. (Emphasis supplied.)

This Court has interpreted this provision as creating a constitutional "administrative body charged with the control of all institutions of higher learning...." *Worzella v. Bd. of Regents of Educ.*, 77 S.D. 447, 450, 93 N.W.2d 411, 413 (1958). It does not, however, "establish the Regents as a fourth branch of government independent of any legislative policies." *Bd. of Regents v. Carter*, 89 S.D. 40, 46, 228 N.W.2d 621, 625 (1975); *South Dakota Bd. of Regents v. Meierhenry*, 351 N.W.2d 450 (S.D.1984); *South Dakota Bd. of Regents v. Meister*, 309 N.W.2d 121 (S.D. 1981). The Regents' control is subject to constitutionally authorized legislative "rules and restrictions." *Meierhenry*, 351 N.W.2d 450; *Carter*, 89 S.D. 40, 228 N.W.2d 621; *Boe v. Foss*, 76 S.D. 295, 77 N.W.2d 1 (1956). These legislative "rules and restrictions," however, "must stop short of removing all power." *Meierhenry*, 351 N.W.2d at 451; *Carter*, 89 S.D. 40, 228 N.W.2d 621.

Although the Board of Regents' control over some aspects of South Dakota educational institutions has been described as "vast and subject to little, if any, control," *State ex rel. Prchal v. Dailey*, 57 S.D. 554, 570, 234 N.W. 45, 52 (1931) (Campbell, J., concurring specially); the Regents' control does not include the power of the purse, *State College Development Ass'n v. Nissen*, 66 S.D. 287, 281 N.W. 907 (1938); does not include the power to change the character of the institutions, *Prchal*, 57 S.D. 554, 234 N.W. 45; does not include the power to create or establish schools, *id.;* and does not include the power to determine the educational policy of this state, *id.* The legislature has the power to create schools, to fund them as it has the power of the purse, and to establish state educational policy and this necessarily includes the power to close a school if efficiency and economy so direct. It is a legislative rule or restriction of the Regents' control and does not go so far as to remove all power because the Regents maintain their right of basic control over all other educational institutions. As stated above, an institution of higher education

is not required by the constitution or the Enabling Act to exist in Springfield.

Appellants here contend, however, that S.B. 221 violates South Dakota Constitution Article XIV, § 3, because the Board of Regents' control of USD/S was transferred to the Board of Charities and Corrections at a time when the facilities were still being used for school purposes. With this legal thesis, we are constrained to disagree.

Section 1 of S.B. 221 places the *"Springfield minimum security prison,* formerly [U]niversity of South Dakota at Springfield ... under the control of the board of charities and corrections."* (Emphasis supplied.) Therefore, this language does not place the control of USD/S and its educational programs under the jurisdiction of the Board of Charities and Corrections. In fact, S.B. 221, Section 10, authorized the completion of the 1984 Spring semester and the conferral of degrees upon those students qualified to graduate by the Board of Regents. Thus, the Board of Regents maintained control until the termination of the educational programs offered at USD/S. Appellants' contentions in opposition are not sustainable due to the express language of the legislative act. The Board of Charities and Corrections was given control of the Springfield minimum-security prison, not USD/S. The trial court ruled S.B. 221 not to be in violation of South Dakota Constitution Article XIV, § 3, and with this determination, we agree.

### III.

DOES SENATE BILL 221 IMPAIR THE OBLIGATIONS OF USD/S BOND CONTRACTS AND DO APPELLANTS HAVE STANDING TO LITIGATE THIS ISSUE? WE AFFIRM THE TRIAL COURT'S HOLDING THAT THIS ISSUE IS NOT RIPE FOR DECISION. WE REVERSE THE TRIAL COURT'S DECISION THAT APPELLANTS DO NOT HAVE STANDING.

In 1974, the Board of Regents reissued bonds on the USD/S dormitory units. These reissued bonds are revenue bonds and are to be repaid from revenues generated by dormitory rentals. They cannot be repaid out of any other fund of the Board of Regents or of any other institution and are not obligations or debts of the State of South Dakota. SDCL 13–51A–24.

■ Appellants' complaint asserts that S.B. 221 impairs the bond contracts and thus violates Article I, § 10, of the United States Constitution and Article VI, § 12, of the South Dakota Constitution. The trial court, however, after the summary judgment hearing, ruled that a default had not occurred and that appellants did not have standing to raise this issue and it dismissed these allegations. We hold that the bond impairment issue is not yet ripe for determination and affirm the trial court's ruling in this respect. However, for the reasons hereinafter delineated, we reverse its determination that appellants do not have standing to litigate this issue.

As the record herein discloses, these bonds are not presently in default and will not possibly become so until March 1986. All payments have been made and enough financing exists in a sinking fund to make the 1985 payment—but not enough to make the scheduled payment in 1986. Appellees, in arguing the impairment issue to be premature, assert that there is no way of knowing how the legislature will provide for payment of these bonds and they expressly concede that some "measure to cover the bonds will of necessity be eventually designated." Appellees thus admit that if the legislature fails to act so as to provide for the scheduled payments in March 1986 and beyond, the bond contracts will become impaired. With this admission, we agree. The legislature will most assuredly have to provide for the payment of these bonds before the end of the 1986 legislative session or before the payment due in March 1986. Whether the source of payment of these bonds will be a rental scheme similar to that approved in *McFarland v. Barron,* 83 S.D. 639, 164 N.W.2d 607 (1969), or whether it will be an appropriation so as to recognize a just and equitable claim, *Payne v. Jones,* 47 S.D. 488, 199 N.W. 472 (1924), or some other appropriate undertaking, is a

decision for the legislature. Failing to provide such a source or make an appropriation before the times outlined above, however, will result in the ripening of the issue now before us. At that time, a definite course of foreseeable governmental conduct will have been evidenced so as to provide a ripe and justiciable controversy.

■ As per appellants' standing, we reverse the trial court's determination that they lack standing. Appellants, admittedly, although resident citizens and taxpayers of this state, are not owners or holders of these bonds. However, ownership, special interest, or injury is not a prerequisite to litigate a case such as this, involving public funds.

It has become the settled law of this state that a taxpayer need not have a special interest in an action or proceedings nor suffer special injury to himself to entitle him to institute an action to protect public rights. *White Eagle Oil & Refining Co. v. Gunderson*, 48 S.D. 608, 205 N.W. 614, 618, 43 A.L.R. 397; *State ex rel. Bryant v. Dolan*, 61 S.D. 530, 249 N.W. 923.

*State ex rel. Jensen v. Kelly*, 65 S.D. 345, 347, 274 N.W. 319, 321 (1937). *See also, Torigian v. Saunders*, 77 S.D. 610, 615, 97 N.W.2d 586, 589 (1959). Assuming arguendo the impairment of the bond contracts, the constitutionality of S.B. 221 would affect public rights because it would affect the use of public funds. "The constitutionality of legislation affecting the use of public funds is a matter of public right." *State ex rel. Parker v. Youngquist*, 69 S.D. 423, 426, 11 N.W.2d 84, 85 (1943). As taxpayers or electors of this state, appellants will be entitled to bring this action when ripe.

## IV.

DOES SENATE BILL 221 VIOLATE ARTICLE III, § 21, OF THE SOUTH DAKOTA CONSTITUTION BY EMBRACING MORE THAN ONE SUBJECT IN THE BODY OF THE BILL? WE HOLD THAT IT DOES NOT.

■ South Dakota Constitution Article III, § 21, provides: "No law shall embrace more than one subject, which shall be expressed in its title." This Court, in interpreting this provision, has declared its purpose to be:

(1) To prevent the combining into one bill of several diverse measures which have no common basis except, perhaps, their separate inability to receive a favorable vote on their own merits; (2) to prevent the unintentional and unknowing passage of provisions inserted in a bill of which the title gives no intimation; and (3) to fairly apprise the public of matters which are contained in the various bills and to prevent fraud or deception of the public as to matters being considered by the legislature.

*South Dakota Ass'n v. State*, 280 N.W.2d 662, 665 (1979). Cognizant of the purpose of this constitutional provision, this Court has declared that it contains two requirements. "First, that no law shall embrace more than one subject, and second, that the subject shall be expressed in the title." *Id.* The requirements of this provision are mandatory. *State v. Morgan*, 2 S.D. 32, 43, 48 N.W. 314, 318 (1891).

Having noted the provision's purpose and requirements, we address appellants' contentions on this issue. First, appellants contend S.B. 221 violates the constitutional provision here in question because S.B. 221's title makes no reference to a transfer of control of USD/S to the Board of Charities and Corrections.[3] However, as we held above, S.B. 221 does not transfer control of USD/S to the Board of Charities and Corrections. Instead, it transfers control of a minimum-security prison located in Springfield. Appellants' contentions in this regard are therefore without merit.

Next, appellants contend that S.B. 221 has more than one subject expressed in the

---

**3.** Senate Bill 221's title reads: "An Act relating to the university of South Dakota at Springfield; changing its mission to a minimum security prison, providing for graduation, authorizing its sale or lease, providing an appropriation and declaring an emergency."

title. In support of their contention, appellants point out that S.B. 221 amends several provisions of SDCL title 24 concerning prison facilities, escape, and prison funding. With this contention, we disagree.

The subject of a law is the public or private concern for which it is enacted, and "all provisions of the Act must relate directly to the same subject, have a natural connection, and not be foreign to the subject as stated in the title." *Meierhenry v. City of Huron,* 354 N.W.2d 171, 182 (S.D.1984) (citation omitted). The subject of S.B. 221 is the closing of USD/S and the establishment of a minimum-security prison. The bill consists of eleven sections, each of which are directly related to, naturally connected with, and not foreign to the closing of USD/S and the establishment of a prison. "[W]hile the subject must be single, provisions to accomplish the objective of an act may be multifarious." *Independent Community Bankers Ass'n v. State,* 346 N.W.2d 737, 741 (S.D. 1984). "The subject is singular 'when a number of things constituting a group or class are treated as a unit for general legislation.' *State v. Youngquist,* 69 S.D. 592, 594, 13 N.W.2d 296, 297 (1944)....'" *Meierhenry,* 354 N.W.2d at 182. The title of S.B. 221 merely reiterates the contents of the body of the bill, all of which relate to its single subject. The title, as does the body of the bill, therefore contains only one subject which evinces the true intent of the act. The trial court determined the title not to violate South Dakota Constitution Article III, § 21, and we affirm its determination in this regard.

## V.

DOES SENATE BILL 221 VIOLATE ARTICLE III, §§ 1 AND 22, OF THE SOUTH DAKOTA CONSTITUTION BY DECLARING AN EMERGENCY? WE HOLD THAT THIS ISSUE IS MOOT.

[10] Senate Bill 221, Section 11, states: "Whereas, this Act is necessary for the support of the state government and its existing public institutions, an emergency is hereby declared to exist, and this Act shall be in full force and effect from and after its passage and approval." Appellants here contend that no justification existed for the emergency clause because the provision for funding a prison, S.B. 221, Section 8, was contingent (Sections 5 and 9)[4] and therefore the emergency clause was attached merely to preclude referral. Whatever the validity of appellants' contentions or the necessity and validity of the emergency clause, for the reasons outlined below, we hold this issue to be moot.

In *State ex rel. Richards v. Whisman,* 36 S.D. 260, 266–67, 154 N.W. 707, 708–09 (1915), *error dismissed,* 241 U.S. 643, 36 S.Ct. 449, 60 L.Ed. 1218 (1916), this Court stated:

Not having filed a proper referendum petition requiring a vote on said [bill], the plaintiffs are not in a position to complain of the invalidity of [the bill] on account of the emergency clause therein contained. The mere fact that this suit was commenced before July 1st will not change the situation....

... The attachment of an unwarranted and void emergency clause to an enactment could in no manner prevent the filing of a proper referendum petition. In order to have kept alive the question of the validity of the emergency clause contained in [the bill], as a question for determination in this court, or the court below, a proper referendum petition should have been filed prior to the 1st day of July last.... *In Riley v. Carico* [sic], 27 Okla. 33, 110 Pac. 738, and in *McIntosh v. State,* 56 Tex.Cr.R. 134, 120 S.W. 455, it is held that the fact that the action of the Legislature in declaring an emergency to exist was void did not invalidate the act or relieve the necessity of filing a referendum petition, but resulted in the act taking effect 90 days

---

**4.** Section 5 pertains to the conditional sale or lease of USD/S; Section 9 provides the authorization for the expenditure of funds by the Board of Charities and Corrections for plans concerning a minimum-security prison, care for the criminally insane and female prisoners, providing there was a sale or lease of USD/S.

after the adjournment of the Legislature. It is therefore clear that the first ground of unconstitutionality of [the bill] urged by appellants is now merely a moot question.

In the case now at bar, appellants failed to file a proper referendum petition before July 1, 1984, concerning the enactment of S.B. 221. As stated above, having failed to file such a petition, the question concerning the validity of the emergency clause attached thereto was not kept alive for this Court or the trial court because the bill, even if the said clause was invalid, would have become effective on July 1st. The mere commencement of litigation before the regular effective date, to wit, July 1st, does not keep the issue alive. The trial court, by a Memorandum Decision dated July 10, 1984, and Findings of Fact and Conclusions of Law dated August 13, 1984, which specifically incorporated the former document, determined S.B. 221 not to be in violation of South Dakota Constitution Article III, §§ 1 (initiative and referendum) and 22 (emergency clause). We modify the trial court's determination in this regard and specifically hold the emergency clause issue to have been moot as of July 1, 1984.

## CONCLUSION

As hereinbefore expressed, we affirm in part, reverse in part, modify in part, and remand for proceedings consistent with this decision. We affirm the trial court's determination in proceedings below that S.B. 221 does not violate South Dakota Constitution Article XIV, § 3; does not violate South Dakota Constitution Article III, § 21; and that USD/S bonds are not presently in default. We reverse the trial court's determination that S.B. 221 does not violate the Enabling Act and South Dakota Constitution Article VIII, § 7, and we specifically hold that S.B. 221 does violate the permanent trust fund provisions of the Enabling Act and South Dakota Constitution Article VIII, § 7. We modify the trial court's holding in regard to South Dakota Constitution Article III, §§ 1 and 22, and rule this issue to be moot. Finally, we remand to the trial court to conduct hearings concerning the extent and nature of all property and interests transferred to the Board of Charities and Corrections from the Board of Regents and its full market value.

All the Justices concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, participating.