SOUTH DAKOTA PHYSICIAN'S HEALTH GROUP, a South Dakota nonprofit corporation, Plaintiff and Appellant,

v.

STATE of South Dakota, acting By and Through its DEPARTMENT OF HEALTH, Honorable Katherine Kinsman as Secretary of the Department of Health, its Department of Commerce and Regulation, Division of Insurance, Honorable Jeffrey Stingley as Secretary of the Department of Commerce and Regulation, Honorable Roger Tellinghuisen as Attorney General of the State of South Dakota, Defendants and Appellees,

South Dakota Chiropractors' Assn. and South Dakota Optometric Society, Dr. G.E. Lee, and Dr. John B. Jarding, Intervenors and Appellees.

16440.

Supreme Court of South Dakota.

Argued May 22, 1989.

Decided Oct. 18, 1989.

David A. Gerdes of May, Adam, Gerdes & Thompson, Pierre and Dennis A. Duncan of Zimmer & Duncan, Parker, for plaintiff and appellant.

Mark Smith, Janice Waysman and John Heege, Asst. Attys. Gen. Pierre, for defendants and appellees.

Charles B. Kornmann of Richardson, Groseclose, Kornmann, Aberdeen and Ronald G. Schmidt of Schmidt, Schroyer, Colwill, Pierre, for intervenors and appellees.

## PROCEDURAL HISTORY/ISSUES

HENDERSON, Justice.

Plaintiff/Appellant, the South Dakota Physician's Health Group (Physician's Group), initiated this action against the State of South Dakota [1] in the circuit court for Hughes County. Physician's Group alleged that SDCL 34-1-20, as amended by 1988 Sess.L.Ch. 273 (H.B. 1272), is unconstitutional and sought to enjoin enforcement of said statute. An amended complaint was subsequently filed, requesting declaratory judgment delineating the scope of the amended statute. The trial court held SDCL 34-1-20 to be constitutional, and denied Physician's Group request for relief. Physician's Group appeals, alleging that the trial court erred in four respects:

1. H.B. 1272 violates S.D. Const. Art. III, § 21, by embracing more than one subject not expressed in its title;

2. H.B. 1272 violates S.D. Const. Art. VI, § 18, by establishing arbitrary classifications among practitioners of the healing arts, and by imposing a criminal penalty where none applies to similar contracts;

3. H.B. 1272 does not apply to renewals of existing contracts; and,

4. The trial court failed to make a declaratory ruling as to what public entities employees are covered by H.B. 1272.

We reverse on constitutional issues 1 and 2. We do not reach the merits of issues 3 and 4, deeming them moot.

## FACTS

Physician's Group is a health maintenance organization (HMO),[2] which markets its services, known as Dakotacare,[3] statewide. Seven hundred and fifty physicians (total S.D. Medical Association membership is approximately 950) are members of Physician's Group. No chiropractors or optometrists provide services via Dakotacare, as these groups have been unable to come to terms with Physician's Group. This failure is apparently due to Physician's Group's refusal to enroll such practitioners as part of Dakotacare basic services. Physician's Group, during negotiations, insisted that chiropractors or optometrists could join Dakotacare only as separate extra-cost options, a prospect the outsiders found unacceptable.

Following breakdown of negotiations, chiropractors and optometrists sought legislation to improve their situation. The result was 1988 S.D. Sess. L. Ch. 273 (H.B. 1272), which was strongly opposed by, among others, Physician's Group, the South Dakota Medical Association, and their lobbyists.

H.B. 1272 was entitled: "An Act to provide for nondiscrimination in the use of public funds for public employees." The act provided:

That § 34-1-20 be amended to read as follows:

34-1-20. Hereafter all funds appropriated by the state of South Dakota or otherwise established by the state, or from any other source whatever as a public fund, to be distributed or allotted for any public health program, financed in whole or in part by such public funds or administered or supervised by any comprehensive health maintenance services, or arranges for the provision of such services, to enrollees on the basis of a fixed prepaid sum without regard to the frequency or extent of services furnished to any particular enrollee." SDCL 58-41-2.

1. Additional intervening parties in this case are the South Dakota Chiropractor's Association, the South Dakota Optometric Society, Dr. G.E. Leo (a chiropractor), and Dr. John Jarding (an optometrist). These parties intervened in support of H.B. 1272.

2. "Health Maintenance Organization" is defined as a "corporation organized under Title 47, controlled and operated as provided in this chapter, which provides, either directly or through arrangements with providers or other persons,

3. Under Dakotacare, employees of a purchasing employer may elect to use services of any hospital or medical professional who is an enrolled member.

public agency controlled by the state *or any county, municipality, school district or other political subdivision,* or any corporation or association organized under the laws of the state for the administration of such funds, shall when administered or distributed in payment of services rendered by physicians or licensed [practitioners of the healing arts] *chiropractors or optometrists* under the provisions of such public health program be so administered or distributed that there shall be no restrictions in the right of any client, *officer, employee* or citizen to select any regularly licensed physician, *chiropractor* or [practitioners of the healing arts] *optometrist* of his choice for the performance of services under such program, provided that this section shall in no way affect the provisions of § 34-1-21, relating to the powers and duties of the department of health relating to the services for crippled children. *This section applies to the purchase of any insurance and any contracts entered into after the effective date of this Act with health maintenance organizations, preferred provider organizations and individual practice associations by the state of South Dakota, counties, school districts and municipalities for health care programs or insurance for public officials or employees.* Any violation of this section is a Class 1 misdemeanor.

The underlined wording was added to SDCL 34-1-20, and bracketed wording was deleted. We note that SDCL 34-1-20 is part of SDCL Ch. 34, which is entitled "Public Health and Safety." As indicated above, prior to amendment by H.B. 1272, SDCL 34-1-20 directed, generally, that there were to be no restrictions on the right of a client or citizen to select "any regularly licensed physician or practitioners of the healing arts" under the provisions of "public health programs" paid for with "public funds." SDCL 34-1-20, before H.B. 1272, made no reference to public employee health insurance contracts (group and blanket health insurance is regulated in SDCL Ch. 58-18, and health insurance, generally, is regulated in SDCL Ch. 58-17).

H.B. 1272 was passed by the legislature, overriding the Governor's veto. Physician's Group unsuccessfully challenged the act's constitutionality and, in the alternative, sought declaratory judgment to establish the scope of the act in the circuit court for Hughes County. The trial court determined that H.B. 1272 was constitutional and applied to renewal contracts, but did not set out which organizations were affected. This appeal followed.

## DECISION

■ H.B. 1272 is unconstitutional. Article III, § 21, of the South Dakota Constitution provides: "No law shall embrace more than one subject, which shall be expressed in its title." This provision has three purposes:

(1) To prevent the combining into one bill of several diverse measures which have no common basis except, perhaps, their separate inability to receive a favorable vote on their own merits;

(2) to prevent the unintentional and unknowing passage of provisions inserted in a bill of which the title gives no intimation; and,

(3) to fairly apprise the public of matters which are contained in the various bills and to prevent fraud or deception of the public as to matters being considered by the legislature.

*Kanaly v. State By and Through Janklow,* 368 N.W.2d 819, 827 (S.D.1985); *South Dakota Ass'n of Tobacco and Candy Distributors v. State,* 280 N.W.2d 662, 665 (S.D.1979). The requirements of this provision are mandatory. *Kanaly,* at 827. *See also, State v. Morgan,* 2 S.D. 32, 43, 48 N.W. 314, 318 (1891). As interpreted by this Court, § 21 contains two requirements: "First, that no law shall embrace more than one subject, and second, that the subject shall be expressed in the title." *Kanaly,* at 827; *South Dakota Ass'n,* at 665. "While the subject must be single, provisions to accomplish the objective of an act may be multifarious." *Kanaly,* at 828 (quoting *Independent Community Bankers Ass'n v. State,* 346 N.W.2d 737, 741 (S.D.1984)). The above principles, when ap-

plied to the facts before this Court, show that H.B. 1272 violates Art. III, § 21.

The title of H.B. 1272 specifies that it is to provide "for nondiscrimination in the use of public funds for public employees". This title is very broad, but is not broad enough to encompass its antithesis. Although the title of H.B. 1272 proclaims it "to provide for nondiscrimination ... in the use of public funds[,]" the actual wording of the act is contrary to that purpose. The protection extended to selection of "any regularly licensed physician or practitioners of the healing arts" in SDCL § 34-1-20 before H.B. 1272 was eroded. In its place, H.B. 1272 discriminates against all "practitioners of the healing arts" *except* physicians, chiropractors and optometrists. "Healing art" is defined in SDCL 36-2-1 as: "[A]ny system, treatment, operation, diagnosis, prescription, or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, injury, unhealthy or abnormal physical or mental condition." A practitioner of such an art is one who engages in, or offers to engage in, or holds himself or herself out as qualified to engage in such an art, and holds a legal and unrevoked license or certificate, issued by the State of South Dakota, under which he or she practices. *See*, SDCL 36-2-2. Such licenses are issued to physicians and surgeons (including osteopaths) (SDCL Ch. 36-4), physician's assistants (SDCL Ch. 36-4A), advanced life support personnel (SDCL Ch. 36-4B), chiropractors (SDCL Ch. 36-5), dentists (SDCL Ch. 36-6), optometrists (SDCL Ch. 36-7), podiatrists (SDCL Ch. 36-8), nurses (SDCL 36-9), physical therapists (SDCL Ch. 36-10), and pharmacists (SDCL Ch. 36-11). Further guidance on this point is furnished by reference to SDCL 58-17-54 (SDCL Ch. 58-17 specifically governs health insurance policies), which directs that reimbursement for services "legally performed by a person licensed in this state for the practice of medicine, surgery, anesthesia by a certified registered nurse anaesthetist licensed under chapter 36-9, psychology, dentistry, osteopathy, social workers licensed under § 36-26-17, optometry, chiropractic or podiatry[,]" physician's assistants, nurses and nurse midwives cannot be denied to licensed practitioners under such policies. This protection extends specifically to plans of self-insurance for public employees. SDCL 58-17-54. The vast narrowing of SDCL 34-1-20 produced by H.B. 1272 cannot be gleaned from the act's title, and the act is, thus, unconstitutional under *Kanaly:* The title conspicuously fails to A) prevent the unintentional and unknowing passage of provisions inserted in a bill of which the title gives no intimation, and, B) apprise the public of matters which are contained in the various bills and to prevent fraud or deception of the public as to matters being considered by the legislature. A nurse, reading the title of H.B. 1272, would be given no hint that a patient's choice of his/her services within the ambit of SDCL 34-1-20 could now be circumscribed.

■ Although we deem the title of H.B. 1272 to be fatally defective, we reject a related assertion, by Physician's Group, that such title is necessarily infirm because it contains no reference to the original act amended by H.B. 1272. In this regard, Physician's Group relies upon *Schomer v. Scott*, 65 S.D. 353, 370-1, 274 N.W. 556, 565 (1937). *Schomer*, however, directs that the Constitution does not mandate such references to the act being amended. *Id.* Thus, while reference to the original act may be helpful in communicating the subject of an amendatory act, lack of such reference does not, by itself, render an act unconstitutional. In *Simpson v. Tobin*, 367 N.W.2d 757, 767 (S.D.1985), we expressed:

> Objections to a legislative act on the grounds that it embraces more than one subject not adequately expressed in its title should be grave, and the conflict between the statute and the constitution must be plain and manifest, before it may be justifiably declared unconstitutional and void.

Physician's Group has not demonstrated the gravity nor the plain and manifest conflict, under this subissue, to declare this statute unconstitutional and void.

■ The discriminatory aspects of H.B. 1272, apparent in our analysis of the title/subject issue, lead us directly to Physician's Group's second argument concerning equal protection. We likewise reverse the trial court on this issue. Although consideration of this issue might be considered moot, we address it because the underlying dispute is capable of repetition. *See, Rapid City Journal v. Circuit Court,* 283 N.W.2d 563, 565 (S.D.1979).

■ In passing, we reject the State's argument that Physician's Group lacked standing to raise the issue of equal protection because no discrimination affects it. H.B. 1272 explicitly relates to use of public funds. It is settled law that "[t]he constitutionality of legislation affecting the use of public funds is a matter of public right." *Wyatt v. Kundert,* 375 N.W.2d 186, 195 (S.D.1985). *State ex rel. Parker v. Youngquist,* 69 S.D. 423, 426, 11 N.W.2d 84, 85 (1943). "Ownership, special interest, or injury is not a prerequisite to litigate a case ... involving public funds." *Kundert,* at 195; *Kanaly, supra,* at 827. We consider Physician's Group to have standing on this issue.

In determining whether the equal protection clause has been violated, this Court utilizes a two-part test derived from *City of Aberdeen v. Meidinger,* 89 S.D. 412, 415, 233 N.W.2d 331, 333 (1975). *See, Sedlacek v. S.D. Teener Baseball Program,* 437 N.W.2d 866, 869 (S.D.1989); *State ex rel. Wieber v. Hennings,* 311 N.W.2d 41, 42 (S.D.1981).

> The first part of this test is "whether the statute does set up arbitrary classifications among various persons subject to it." (citation omitted). The second part of the test is the application of the appropriate standard of review to the arbitrary classification. (citation omitted).

*Hennings,* at 42 (quoting *Meidinger, supra* ). "Applying the first prong, we look to see if the statute applies equally to all people." *Lyons v. Lederle,* 440 N.W.2d 769, 771 (S.D.1989). *See also, Janish v. Murtha,* 285 N.W.2d 708, 709 (S.D.1979). H.B. 1272 does not apply equally to all, on its face. It deletes protection against discrimination afforded to all "practitioners of the healing arts" and limits such protection to physicians, chiropractors and optometrists. This appears to be an arbitrary classification. While some healers are protected, others are not, with no apparent basis for such a distinction. While physicians and various other "practitioners of the healing arts" are regulated separately in chapters of SDCL Title 34, there is no perceptible reason for the distinctions drawn here, which affect patients' choices and contracting ability.

As no suspect classes or fundamental rights are involved, our standard of review is to "inquire whether there is a rational relationship between the classification or classifications and some legitimate legislative purpose." *Matter of Clark,* 340 N.W.2d 189, 192 (S.D.1983). The provisions of relating to "practitioners of the healing arts" in H.B. 1272, intended, by its title," to provide for nondiscrimination in the use of public funds for public employees" obviously do not bear any rational relationship to such an end. Although a statute will not be declared invalid "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest" (*Birchfield v. Birchfield,* 417 N.W.2d 891, 894 (S.D.1988) (quoting *Frontiero v. Richardson,* 411 U.S. 677, 684, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583, 589 (1973)), such is the case here. H.B. 1272 is unconstitutional insofar as it discriminates against practitioners of the healing arts.

■ We reject, however, Physician's Group's claims that H.B. 1272 violates equal protection in singling out health maintenance organizations, preferred provider organizations and individual practice associations. The historical background of this act, extensively laid out below, and before this Court, indicates that these groups, by their nature, have a great potential for funneling patients away from optometrists and chiropractors. "A State is not constrained in the exercise of its police power to ignore experience which marks a class of offenders or a family of offenses for special treatment." *State v.*

**516**

*King,* 82 S.D. 514, 517, 149 N.W.2d 509, 510 (1967) (quoting *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)). Physician's Group has the "burden of proving beyond a reasonable doubt that the classification violates equal protection." *Birchfield, supra,* at 894. Unlike the matter of discrimination against "practitioners of the healing arts", considered above, Physician's Group failed to carry its burden on this sub-argument.

The trial court is reversed, as H.B. 1272 is unconstitutional in its entirety under S.D.Const. Art III, § 21. We have treated the merits of the second issue but do not reach the merits of the third and fourth issues raised by Physician's Group. These issues, concerning application of the act to renewal contracts and the scope of public entities encompassed, are moot, given our resolution of the first and second issues.

Reversed.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

I would not reach the merits on the second issue because it is moot, as indicated by the majority. "A fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 442, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534, 544 (1988).